United States District Court
Southern District of Texas
**ENTERED**
August 22, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PAKAGE APPAREL INC, | § § § § § § § § § § § | CIVIL ACTION NO 4:23-cv-04337 |
| Plaintiff, | | |
| vs. | | JUDGE CHARLES ESKRIDGE |
| TOMMY JOHN INC, | | |
| Defendant. | | |

OPINION AND ORDER
GRANTING MOTION TO TRANSFER VENUE

The motion by Defendant Tommy John, Inc, to transfer this patent infringement action to the Southern District of New York is granted. Dkt 22.

1. Background

Plaintiff Pakage Apparel is a Canadian company with its headquarters in British Columbia. Dkt 1 at ¶7. It does business under the name *BN3TH*. Ibid. It manufactures and sells men's underwear. Id at ¶2. It also has certain patents for its undergarments, including one at issue in this litigation and referred to as *the '974 Patent*. Id at ¶3. Stated simply, the patent describes "an innovative pouch to provide men with comfortable and secure support during exercise." Dkt 24 at 6, citing Dkt 1 at ¶¶19–22. Pakage Apparel sells its underwear online and in retail stores throughout the United States. It has no brick-and-mortar stores anywhere, but does sell its underwear in certain Houston retail stores. Dkt 24-1 at ¶4 (Pakage Apparel declaration).

One of its competitors is Defendant Tommy John Inc. Tommy John is a Delaware company with a principal place

of business in New York, which it also characterizes as its headquarters. Dkts 1 at ¶8 & 22 at 7. Tommy John sells its underwear online and in over 2,000 retail stores across the United States. Dkt 25 at 4, citing Dkt 24-1 at 30. It also has six branded stores of its own, including one in the Houston Galleria. Dkt 24 at 5.

Pakage Apparel filed this action asserting a claim for patent infringement in the Southern District of Texas in November 2023. Dkt 1. It alleges that five Tommy John products infringe on its rights in the '974 Patent, referred to as *the accused products*. Id at ¶5. Pending is a motion by Tommy John to transfer the case to the Southern District of New York. Dkt 22.

## 2. Legal standard

Section 1391 of Title 28 of the United States Code states the general rule for venue of civil actions, which includes a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Section 1400(b) further provides a specific rule for patent cases, that such may be brought where the defendant "resides[ ] or . . . has committed acts of infringement and has a regular and established place of business."

Once brought, §1404(a) then provides that an action may be transferred for the "convenience of parties and witnesses" and "in the interest of justice" to any other district "where it might have been brought." This potential for transfer serves to prevent a potentially unfair imposition of burden on defendants when plaintiffs exercise their privilege to select venue in the first instance. See *In re Volkswagen of America, Inc*, 545 F3d 304, 313 (5th Cir 2008) (*Volkswagen II*).

When considering a motion to transfer, the initial question is whether the action "might have been brought" in the alternative venue. Id at 312, citing 28 USC §1404(a). If it could, the district court then determines whether transfer serves "the convenience of parties and witnesses" and is "in the interest of justice." *In re TS Tech USA Corp*, 551 F3d 1315, 1319 (Fed Cir 2008), quoting 28 USC

2

§1404(a) and *Volkswagen II*, 545 F3d at 315; see also *In re Volkswagen AG*, 371 F3d 201, 203 (5th Cir 2004) (*Volkswagen I*), citing 28 USC §1404(a). This balance considers a range of private and public factors, with none having dispositive weight. *In re TS Tech USA*, 551 F3d at 1319, citing *Volkswagen II*, 545 F3d at 315 (internal citation omitted); see also *Volkswagen I*, 371 F3d at 203.

The items of private-interest consideration are:
- o   The relative ease of access to sources of proof;
- o   The availability of compulsory process to secure the attendance of witnesses;
- o   The cost of attendance for willing witnesses; and
- o   All other practical problems that make trial of a case easy, expeditious, and inexpensive.

*In re TS Tech USA*, 551 F3d at 1319, citing *Piper Aircraft Co v Reyno*, 454 US 235, 241 n 6 (1981).

The items of public-interest consideration are:
- o   The administrative difficulties flowing from court congestion;
- o   The local interest in having localized interests decided at home;
- o   The familiarity of the forum with the law that will govern the case; and
- o   The avoidance of unnecessary problems of conflict of laws or the application of foreign law.

Ibid, citing *Volkswagen II*, 545 F3d at 315.

Whether to order transfer is ultimately within the broad discretion of the district court. *Volkswagen II*, 545 F3d at 311. To justify transfer, the movant must demonstrate that its preferred venue is "clearly more convenient than the venue chosen by the plaintiff." Id at 315. This burden on the movant "adequately accounts for a plaintiff's choice of forum," to which the venue-transfer analysis doesn't otherwise accord any special deference. *Ayala v Waste Management of Arizona, Inc*, 2019 WL 2085106, *3 (SD Tex) (citations omitted).

3. Analysis

The parties agree that this action could have initially been brought in the SDNY. See Dkts 22 at 11 & 24 at 9. The dispute is whether, on balance, transfer serves the convenience of parties and witnesses and is in the interest of justice.

*As to the relative ease of access to sources of proof*, the Federal Circuit holds, "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc*, 979 F3d 1332, 1340 (Fed Cir 2020), citing *In re Genentech, Inc*, 566 F3d 1338, 1345 (Fed Cir 2009). Tommy John establishes by declaration that all research, design, and development activities relating to the accused products—including marketing, sales, and finance decisions—are in or near its headquarters in Manhattan. Dkt 22-1 at ¶5. This means that all business records related to the accused products are also housed in or near its New York headquarters. Id at ¶6. Likewise, Tommy John witnesses with knowledge of the design, development, marketing, and sales of the accused products who are likely to testify reside and work in or near New York. Id at ¶¶7–8.

Given its Canadian presence, Pakage Apparel has no documents or witnesses of its own in Houston or Texas generally. Dkt 22 at 9. But as to Tommy John, it asserts that electronic design information is what's relevant in this action, which can be readily accessed from Houston. Dkt 24 at 12. In this modern era of litigation, that's presumably true. But it's in no way responsive to the fact that a clear center of gravity in terms of witnesses and documents is actually in New York and not Houston. Pakage Apparel also emphasizes that Tommy John sells the accused products at one of its retail stores in Houston, and argues that this essentially is enough to resolve the venue question in its favor. Dkt 24 at 10–11. No case is cited in support of such a reductive argument. Nor does it address the fact that Tommy John sells the accused products in

4

over 2,000 retail stores. Dkts 25 at 4 & 22-1 at ¶9 (Tommy John declaration). To adopt Pakage Apparel's argument would in large measure suggest that venue is more convenient adjacent to each of those locations for that reason alone. Instead, the question at this point pertains to relative ease of access to evidence relevant to this litigation. And Tommy John establishes that its retail store in the Houston Galleria is its only presence in the State of Texas (beyond general internet marketing activities throughout the United States), and that no witnesses or documents pertinent to design (being perhaps the most critical factor in this infringement action) reside here. Dkt 22 at 8; see also, Dkt 1 at ¶¶13–16.

In light of the above, the SDNY is a genuinely more favorable venue regarding relative ease of access to sources of proof. This weighs heavily in favor of transfer.

*As to the availability of compulsory process to secure the attendance of witnesses,* Tommy John argues that it may want to subpoena other non-party undergarment companies in the New York area due to their experience with the '974 Patent—including two who were identified in past litigation as having potential prior art underwear, including early commercial products that predate the '974 Patent. Dkts 22 at 15 & 25 at 5.

Pakage Apparel counters that Tommy John doesn't identify any particular witness with specificity or that they would be unwilling to testify. Dkt 24 at 13–14. It also argues that Tommy John doesn't indicate why certain non-party witnesses would be easier to access in New York versus Texas, given the fact that the witnesses "affirmatively identified by Tommy John . . . all reside outside of SDNY." Dkt 24 at 16. But quite to the contrary, Tommy John establishes that evidence and witnesses are within subpoena power of the SDNY as to Calvin Klein, Ralph Lauren, Jockey International, The Moret Group, Mack Weldon, and 2(X)IST. Dkt 22 at 15.

While not of overwhelming weight, this factor does still favor transfer.

*As to the cost of attendance for willing witnesses,* the Federal Circuit holds that "when there are numerous witnesses in the transferee venue and the only other witnesses are far outside the plaintiff's chosen forum, the witness-convenience factor favors transfer." *In re Google LLC*, 2021 WL 4427899, at *4 (Fed Cir). Tommy John establishes by declaration in this regard that all of its witnesses are in or near Manhattan, and many of Pakage Apparel's witnesses reside in New York as well. Dkts 22-1 at ¶¶7–8 & 22-2 at ¶¶2–3. This also includes potential third-party witnesses in or near New York, as noted above. Dkt 22-2 at ¶¶4–9. And regardless, any witness from the Canadian headquarters of Pakage Apparel will have to travel a significant distance to get to either New York or Houston. Dkt 22 at 17.

Pakage Apparel again points to the Tommy John store in the Houston Galleria, arguing that certain, identified employees there sold the accused product and their presence in Texas weighs against transfer. Dkt 24 at 19. The argument elides relevance to actual points at issue in this litigation. Tommy John has identified five employees who work in New York and likely interact with or oversee the design and marketing of the accused products, including its Chief Product Officer, Vice President of Design, and Vice President of Creative Marketing. Dkts 22-1 at ¶¶8 & 25 at 7–8. These are the important company functions at issue in the complaint. By contrast, the two witnesses identified by Pakage Apparel serve in a retail-store sales capacity only—not in design or marketing. Dkt 24 at 19.

This factor without question weighs in favor of transfer. See *Genentech*, 566 F3d at 1344–45 (favoring transfer where "substantial number of material witnesses" reside within transferee venue and none within original venue).

*As to all other practical problems that make trial of a case easy, expeditious, and inexpensive,* Judge Nancy Atlas has noted, "One of the practical considerations a court considers in the 1404(a) analysis is whether transfer would

6

delay already protracted litigation." *Kilbourne v Apple Inc*, 2018 WL 3954864, *4 (SD Tex). Tommy John correctly notes that this case is in its infancy. Dkt 22 at 19. It also establishes that Pakage Apparel put Tommy John on notice of the asserted patent in November 2020, to which Tommy John responded the very next month with explanation why the patents weren't infringed or were invalid—which was followed by over three years of inaction before Pakage Apparel instituted this lawsuit. See Dkt 25-1 at ¶¶6–10 (Tommy John follow-up declaration). Time, it says, is hardly of the essence.

Pakage Apparel argues that the docket procedures of the SDTX are superior to those of the SDNY. Dkt 24 at 21–22. It mainly points to adoption by the SDTX of Local Patent Rules, with paired assertion that the SDNY has none of such general applicability. This Court is wary of placing self-referential preference on its own rules to the extent that such would come with an implied criticism of the procedures of another major metropolitan federal district with a robust commercial litigation docket of its own. And see Dkts 25 at 9, 24-1 at 183–86 (Pakage Apparel declaration) & 25-1 at ¶¶11–14 (Tommy John declaration) (indicating that SDNY has certain local rules that detail structure and timing for patent cases, and that many judges have patent case management plans and scheduling orders). Regardless, the simple fact remains that Pakage Apparel targets design decisions made in New York by Tommy John, and as already noted, far more witnesses for both parties live in or convenient to New York than to Houston. This would make trial of the case there easier and less expensive. This is especially so where Pakage Apparel has no physical presence or witnesses of its own whatsoever in the SDTX.

This factor weighs heavily in favor of transfer.

*As to the administrative difficulties flowing from court congestion,* the concern is "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc*, 823 FAppx 929, 932 (Fed Cir 2020). Neither party presents a persuasive argument moving this

factor much beyond neutral. Compare Dkt 22 at 19–20, with Dkt 24 at 23–24. Both dockets are similarly metropolitan and busy, with any assessment of relative congestion being conjectural on the margins.

To be sure, data doesn't support contention that transfer of venue to the SDNY would result in a less efficient resolution of these claims. The most recent official data from the US Patent and Trademark Office appears to reflect that, of the 4,002 unique patent cases filed in federal district courts in 2020, 72 were filed in the SDTX and 103 were filed in the SDNY. See United States Patent and Trademark Office, *Patent Litigation Docket Reports Data* (full set of data files for 2020), archived at https://perma.cc/NQ4R-7QFJ. It also appears that by the end of 2020, the SDTX had closed 54 of those 72 cases, for a 1-year turnover rate of 75.00%, while the SDNY had closed 91 of its 103 cases, for a 1-year turnover rate of 88.35%. Ibid. This is based on the Court's own assessment of the data. Compare Dkt 22-3 at 67-68 (Tommy John exhibits assessing other data and calculating 43 months to trial on patent cases in SDTX and 28 months in SDNY).

Regardless the exact count and calculation, this factor is either neutral or slightly favors transfer.

*As to the local interest in having localized interests decided at home,* the Federal Circuit observes, "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and *the events that gave rise to a suit.*" *In re Apple*, 979 F3d at 1345 (emphasis in original). Tommy John thus points out that the accused products were designed and developed in New York, and that the suit "'calls into question the work and reputation' of Tommy John's employees residing in" the state. Dkt 22 at 21, quoting *JPT Group, LLC v Balenciaga & Balenciaga America, Inc*, 2017 WL 570959, *5 (SD Tex).

Pakage Apparel counters that Tommy John "identifies no one other than the five employees . . . three of whom are [new to the company], who know nothing about the research, design, and development of the Accused

8

Products." Dkt 24 at 25. But this is unpersuasive, given that the identified individuals serve as the corporate leaders of their respective departments, being marketing and design. See Dkt 22-1 at ¶8. And while it's again true (as reiterated by Pakage Apparel) that the sale of potentially infringing underwear in Houston may impact local interests in some marginal way, the crux of the lawsuit is accusation that a New York company is infringing a rival's patent.

The relevant interests of this litigation more heavily implicate the interests of the SDNY. See *In re Hoffmann-LaRoche Inc*, 587 F3d 1333, 1338 (Fed Cir 2009) (observing that "sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue"). This in turn weighs heavily in favor of transfer.

*As to the familiarity of the forum with the law governing the case and the avoidance of unnecessary conflict of laws,* these factors are neutral. Both venues are federal courts equally capable of discerning and applying federal patent law.

On considered balance, the relevant private and public factors weigh heavily in favor of transfer of the case from the SDTX to the SDNY. The motion will thus be granted and such transfer made.

4. Conclusion

The motion by Defendant Tommy John, Inc, to transfer venue of this action is GRANTED. Dkt 22.

This action is hereby TRANSFERRED to the Southern District of New York.

SO ORDERED.

Signed on August 22, 2024, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge

9